J-S71002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.K.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.P., FATHER | : | |
| | : | No. 2016 EDA 2018 |

Appeal from the Order Entered June 12, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000133-2018
CP-51-DP-0001080-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.P., FATHER | : | |
| | : | No. 2019 EDA 2018 |

Appeal from the Order Entered June 12, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000135-2018
CP-51-DP-0000017-2017

BEFORE:  PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 07, 2019**

W.P. ("Father") appeals from the decrees and orders entered June 12, 2018, which granted the petition of the Philadelphia County Department of Human Services ("DHS") and terminated his parental rights to his minor sons R.K.P. (born October 2015) and J.M.H. (born January 2017) (collectively "Children"), pursuant to § 2511(a)(2), (5), (8), and (b) of the Adoption Act,

and changed the Children's permanency goal to adoption pursuant to § 6351 of the Juvenile Act.[1] Additionally, Father's counsel, Robin W. Banister, Esquire, seeks to withdraw his representation of Father pursuant to **Anders v. California**, 87 S. Ct. 1936 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992). We grant counsel's petition to withdraw and affirm the decrees and orders.

We adopt the following recitation of facts from the trial court opinion, which in turn is supported by the record. **See** Trial Court Opinion ("TCO"), 8/16/18, at 1-19. Prior to the initiation of this matter, Mother had been involved with DHS. In March 2015, Mother's parental rights to four older children were involuntarily terminated. At least two other children of Mother's, were also committed to DHS at this time.

On May 10, 2016, DHS received a general protective services report alleging that seven-month-old R.K.P. had been last seen for a well-child visit in March 2016, and at the time, had been vomiting. Mother was counseled regarding overfeeding R.K.P. and appeared overwhelmed and frustrated caring for R.K.P. and his older sister, two-year-old H.H. Mother was living in a substance abuse shelter with Children, had missed three scheduled visits for R.K.P. at St. Christopher's Hospital for Children, and was not current with

---

[1] That same day, the court terminated the parental rights of R.H. ("Mother"). We addressed Mother's appeal in a separate memorandum. The court also terminated the parental rights of L.E., the father of H.H. L.E. has not separately appealed the termination.

R.K.P.'s vaccinations. After the shelter was contacted, Mother left the shelter without leaving valid contact information.

On May 11, 2016, DHS phoned Mother and informed her that DHS and an in-home protective services social worker would visit her home the next day. Mother agreed to the visit; however, upon the arrival of social workers, she was not at home. DHS learned that Mother had been evicted several days earlier. Mother did not respond to repeated calls and text messages, but eventually provided DHS with an updated address. When DHS visited the new address no one answered the door. Another family's name appeared on the nameplate.  DHS left a notice letter in the mailbox.

On June 3, 2016, DHS filed a dependency petition as to H.H. and R.K.P., noting that aggravated circumstances existed pursuant to 42 Pa.C.S.A. § 6302.  On July 13, 2016, Mother was incarcerated for civil contempt. At that time, Father brought H.H. and R.K.P. to DHS, and provided DHS with the address where he resided with Mother.

Father stated to DHS that he could not care for Children at that time.

On July 14, 2016, DHS filed an application for emergency protective custody and on July 15, 2016, obtained an order for protective custody for R.K.P. and H.H.

On August 9, 2016, R.K.P. and H.H. were adjudicated dependent and removed from Mother's care. At an October 2016 permanency review hearing, Father was in need of housing, and was referred to the Achieving Reunification Center ("ARC"), but did not attend.

In January 2017, Mother gave birth to J.M.H., who was removed from her care after discharge from the hospital. Following a shelter care hearing, J.M.H. was placed in foster care. On January 6, 2017, Mother tested positive for opiates. On January 13, 2017, the court held a permanency review hearing for H.H. and R.K.P. At that time, Father's visitation was adequate; he was to provide Community Umbrella Agencies with proof of employment, and re-referred to ARC. On February 6, 2017, J.M.H. was adjudicated dependent.

In April 2017, the court entered an aggravated circumstances order as to Mother due to the earlier involuntarily terminations of her parental rights to her older children. In July 2017, Father's visitation was decreased to weekly, ninety-minute supervised visits at DHS. Father had been referred to Focus on Fathers, an ARC program, but had not complied. He was discharged from ARC due to his lack of participation. Father was re-referred for parenting classes, ordered to obtain appropriate housing, and provide confirmation of employment by the next hearing.[2]

On February 20, 2018, DHS filed a petition seeking to involuntarily terminate the parental rights of L.E., Mother, and Father pursuant to §2511(a)(1), (2), (5), (8), and (b), and petitions to change Children's goal to

---

[2] An additional permanency review hearing was held in November 2017, although the order does not provide additional information regarding Father's progress.

adoption. DHS filed amended termination and goal change petitions in May 2018.[3]

On June 12, 2018, the court convened hearings on the goal change and termination petitions. Children were represented by Marilyn Rigmaiden-DeLeon, Esquire, as guardian *ad litem*, and James Martin, Esquire, as legal counsel. Father, represented by counsel, was present at the hearing and testified on his own behalf. Dr. William Russell, forensic psychologist; Jennifer Kosloski, DHS social worker; and Marita Thorpe, DHS case aide, testified for DHS.

Dr. Russell testified that he performed parenting capacity evaluations of Mother in 2014-2015, and 2017-2018. It does not appear that Dr. Russell performed a parenting capacity evaluation of Father, and he offered no testimony related to Father.

Jennifer Kosloski testified that she has been the assigned DHS case manager for the family since 2014. DHS has been involved with Mother since 2012. Mother has twelve children; her parental rights to four children were previously terminated, and nine children are currently in the custody of DHS.[4] Father's objectives were to obtain and maintain stable, suitable housing; attend weekly supervised visits; complete all workshops at ARC; and provide DHS with any address or telephone number changes. Father did not achieve

---

[3] Mother gave birth to C.H. in April 2018. Father is the biological father of C.H. C.H. is in the legal custody of DHS.

[4] Mother clarified that she has eleven children in total and ten living children.

consistency in his housing; in July 2017 he informed Ms. Kosloski that he and Mother were living in Mother's grandmother's home, which was abandoned and did not have electricity or running water. Father claimed that he could not complete ARC parenting classes due to his work schedule, but did not provide an employment schedule or employment documentation. Father is consistent with his visitation, but outside of the weekly supervised visits has no contact with Children.

Children are placed together in a pre-adoptive home. They have a bonded relationship with their foster mother. Ms. Kosloski's opinion was that Children would not be irreparably harmed by the termination of Father's parental rights, and that it was in their best interests to be placed for adoption.

Marita Thorpe testified that she is the supervisor of Father's weekly visits with Children. Ms. Thorpe requested visits be shortened, because Children would get agitated during lengthier visits and would cry throughout the duration. R.K.P. and J.M.H. interact with their father well during visits, and J.M.H. runs to Father, but neither child cries at the end of the visit or asks for Father. Children call their foster mother "mom," and run to see her at the end of each visit with Father. R.K.P. calls Father "B____," while J.M.H. calls Father "dad." Additionally, although R.K.P. is stubborn and does not listen to Mother or Father, he allows foster mother to redirect him.

Father testified that he last saw his Children a week before the hearing. When Children see him, they run to him. Father denied ever living in an abandoned building, and claimed he had called Ms. Kosloski to request a home

visit but that she was too busy to look at the new home. Father testified that he loves his Children, but admitted he did not buy them birthday cards, and could not remember their birthdays. Father claimed he was employed all four years Children were in the custody of DHS, but admitted that he did not provide paystubs or report his income. Father admitted he never offered foster mother any child support, had never sent a birthday or Christmas gift or card to Children. However, Father stated he buys food for Children at every visit. Father testified that he had never lived with Mother and was not in a relationship with her, despite having a two-month-old son with Mother, born in April 2018.

At the conclusion of the hearing, the court, without allowing argument by counsel for any party, terminated the parental rights of L.E., Mother, and Father pursuant to §2511(a)(2), (5), (8), and (b). Father timely filed notices of appeal and statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by finding that [DHS] proved by clear and convincing evidence that it was in the children's best interests to grant the DHS petitions to change the goal to adoption because Father was a viable reunification resource and he was bonded to his children.

2. Whether the trial court erred and/or abused its discretion by granting the DHS petition to terminate Father's parental rights because it failed to consider the 2511(a)(1)(2)(5)(8) [sic] evidence in "the totality of the circumstances."

3. Whether the trial court erred and/or abused its discretion by finding that DHS proved by clear and convincing evidence that it was in the "best interests" of the children to be adopted because Father consistently visited and was very involved in playing with his children, and was bonded with them according to the agency witness.

**Anders** Brief, at 3 (suggested answers and unnecessary capitalization omitted).

When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under **Anders**, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

978 A.2d at 361.

Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief.

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014) (internal citation and quotation marks omitted).

After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, only then may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Attorney Banister's *Anders* brief complies with these requirements. He includes a summary of the relevant factual and procedural history; he refers to the portions of the record that could arguably support Father's claim; and he sets forth his conclusion that the appeal is frivolous and no other issues could be raised. He explains his reasoning and supports his rationale with citations to the record and pertinent legal authority. Additionally, Attorney Banister has supplied Father with a copy of the *Anders* brief and letter explaining his rights. Thus, counsel has complied with the technical requirements for withdrawal.

We next need to independently review the record to determine if the issues raised are indeed frivolous and to ascertain whether there are any non-frivolous issues Father may pursue on appeal.

Upon review of the record and prior to addressing the merits of Father's appeal, however, we must first address *sua sponte* the representation provided by Children's legal counsel. *See In re K.J.H.*, 180 A.3d 411, 412-414 (Pa. Super. 2018). Our Supreme Court, in *In re Adoption of L.B.M.*,

161 A.3d 172, 183 (Pa. 2017) (plurality), held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. *See id*.

Since *L.B.M.*, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-591 (Pa. Super. 2018). The Pennsylvania Supreme Court has held that: (1) a GAL may serve as counsel where there is no conflict between the child's legal and best interests, and (2) that there is no conflict between the child's best and legal interests if the child is non-communicative due to the child's young age. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018).

Here, the trial court appointed legal counsel for Children, Attorney James Martin, Esquire. Attorney Martin was present at the hearing and participated in cross-examination of witnesses. However, he did not argue Children's preferred outcome. Regardless, R.K.P. and J.M.H. were too young to express their preferences, and accordingly, there was no conflict between their legal and best interests. *See*, *e.g.*, *id*. While we note with disapproval Attorney Martin's failure to file a brief before this Court or join the brief of another party, this does not impede our review. *See In re Adoption of T.M.L.M.*, 184 A.3d at 590 (recognizing that counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights

hearing, and counsel abdicates legal responsibilities to his client when he fails to file a brief or otherwise notify this Court of his client's position).

We turn now to the merits of Father's appeal as to Children. Father first challenges the goal change to adoption. He argues that DHS did not make reasonable efforts to get Father into parenting programs, because only two referrals were made and the referrals were for day-time programs Father could not attend due to work.

With regard to dependency cases:

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015) (citation omitted). Thus, we employ an abuse of discretion standard. *See In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S.A. § 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection, as well as the physical, mental, and moral welfare of the child. *See* 42 Pa.C.S.A. § 6351(g). With a goal change petition, the trial court

> considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards

alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting *In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

We have further noted that

[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Here, the court did not err in changing Children's goal to adoption. DHS made multiple referrals to ARC so that Father could attend parenting classes. Father did not comply with these orders. Although Father claimed that he could not attend the parenting classes due to his work schedule, Father offered no evidence, throughout the entire pendency of the case, that he was gainfully employed or of his work schedule. Additionally, Father required appropriate housing in order to be reunified with Children. Although Father claimed at the termination hearing that he had "got a house," Father produced no evidence, throughout the pendency of the case, that he had signed a lease, or that he had achieved appropriate housing for Children. Based on the above, Father

was not compliant with the family service plan, had made no progress towards alleviating the circumstances that had led to Children's placement, and showed no indication that those circumstances would be remedied in any reasonable amount of time.

We now turn to Father's arguments regarding the termination of his parental rights.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

We may affirm the court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We will analyze the court's decision to terminate under § 2511(a)(2) and (b). Subsection (a)(2) provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 14 -

. . .

23 Pa.C.S.A. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.*, 797 A.2d at 337. And a parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*, at 340.

Father argues that the court erred in terminating his parental rights under subsection (a)(2), because he was not unable or refused to provide essential parental care to Children. Father claims that he maintained contact with Children, played with them at visits, and patiently redirected them without yelling.

Here, Father's arguments are without merit. Throughout the pendency of this case, he was not able to maintain appropriate housing. Additionally, although Father claimed to be employed, he provided no evidence or documentation of employment and did not use any funds from employment to obtain appropriate housing or contribute to the care of Children. Although Father maintained supervised visits with Children, he could not be graduated to unsupervised visitation due to his continued relationship with Mother. While the Children interact well with Father, there is no difficulty in separation from him, and they do not cry when they cannot visit. Only one of the Children calls Father "dad." As of the date of the termination hearing, Father still had not completed his family service plan objectives, including parenting classes, despite multiple referrals. In short, Father provided no evidence that he had remedied the incapacities leading to the placement of Children in the first instance.

Accordingly, we conclude that the trial court properly found by competent, clear, and convincing evidence that Father's parental rights to Children could be terminated pursuant to subsection (a)(2), based upon the finding that Father evinced a continued incapacity—his inability to complete parenting classes, obtain stable housing, and employment—that resulted in Children being without essential parental care, the cause of which "cannot or will not be remedied.

We next determine whether termination was proper under § 2511(b).

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations, brackets and quotation marks omitted; brackets added). "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted).

Here, evidence was presented to show that Children had a bonded relationship with their foster mother and would not be irreparably harmed by the termination of Father's parental rights. Although Children interact well with Father, they do not cry when they do not see him, and they do not show sadness when they part from him. Additionally, even beyond any bond with

- 17 -

Father, Children's best interests are served by the permanency, stability, and safety provided by their relationship with their foster mother.

On this record, indicating that there was not a strong bond between Father and Children, clear and convincing evidence supports the trial court's termination of Father's parental rights with respect to subsection (b), where adoption would best serve Children's needs and welfare. Accordingly, we affirm the trial court's decrees and orders as to R.K.P. and J.M.H., and grant counsel's motion to withdraw.

Decrees affirmed. Orders affirmed. Motion to withdraw as counsel granted.

Judge Nichols joins the memorandum.

Judge Dubow did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/19